## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## SOUTHWESTERN DIVISION

| | |
|---|---|
| **MAGGIE DREW** | ) |
|        **An individual** | ) |
| | ) |
| **v.** | ) **Case No.:** |
| | ) |
| **BOYD HOUSEHOLDER, STEPHANIE** | ) |
| **HOUSEHOLDER,** *husband and wife* | ) |
| | ) |
| **Serve at:** | ) |
| | ) |
|       **19205 East Overland Road** | ) |
|       **Nevada, MO** | ) |
| | ) |
| **CIRCLE OF HOPE GIRLS RANCH AND** | ) |
| **BOARDING SCHOOLS** | ) |
| | ) |
| **Serve at:** | ) |
| | ) |
| **JEFFREY ABLES, individually and as** | ) |
| **Director of Circle of Hope Girls' Ranch and** | ) |
| **Boarding School** | ) |
| | ) |
| **Serve at:** | ) |
| | ) |
| **516 S. Bermier Ave.** | ) |
| **Springfield, MO 65802** | ) |
| | ) |
| **AGAPE BOARDING SCHOOL,** | ) |
| | ) |
| **Serve at:** | ) |
| | ) |
|       **12998 E. 1400 Road** | ) |
|       **Stockton, MO 65785** | ) |
| | ) |
| **AGAPE BAPTIST CHURCH, INC.** | ) |
| | ) |
| **Serve at:** | ) |
| | ) |
| **12998 E. 1400 Rd.** | ) |
| **Stockton, MO 65785**     ) | |
| | |
| | ) |
| **JAMES CLEMENSON (deceased)** | ) |

**Serve at:**                                   )
                                                )
                                                )
  **12998 E. 1400 Rd.**                         )
  **Stockton, MO 65785**                )
                                                )
                                                )

<u>**PETITION FOR DAMAGES**</u>

COMES NOW Plaintiff, Maggie Drew, by and through her counsel, and for her Petition for Damages against Defendants hereby states as follows:

1.      All the Defendants named herein have acted together and separately to abuse children at their unlicensed "schools" and "ranches," supporting one another and failing to report the known abuses and/or covering up these abuses.

2.      Defendants Boyd and Stephanie Householder and Circle of Hope Girls Ranch and Boarding Schools forced Plaintiff Maggie Drew into forced labor, which is defined as a condition of servitude induced by means of a pattern of behavior intended to cause a person to believe that if the person does not enter into or continue the servitude, that person or another person will suffer substantial bodily harm or physical restraint.

3.      Defendants Boyd and Stephanie Householder and Circle of Hope Girls Ranch and Boarding School engaged in sex trafficking and involuntary servitude in violation of the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008.

4.      Defendants Boyd and Stephanie Householder and Circle of Hope Girls Ranch defrauded Plaintiff and her parents of substantial sums of money in violation of the Racketeering Influenced Corrupt Organizations Act (RICO) and the tort of fraud under Missouri law.

5.      Defendants Boyd and Stephanie Householder and Circle of Hope Girls Ranch failed to supervise the staff and administrators allowing the abuses set forth herein to occur.

2

6.     Defendant Ables failed to report the abuses that were occurring at the Girls Ranch to appropriate authorities, allowing the abuses to continue.

7.     Defendant Clemenson failed to report the abuses that were occurring at the Girls Ranch to appropriate authorities, and actively aided and abetted the abuses that were occurring.

## JURISDICTION AND VENUE

8.     Plaintiff brings her Complaint under federal question jurisdiction under 28 U.S.C. § 1331, pursuant to federal laws 18 U.S.C. § 1591(a) *et seq.,* 18 U.S.C. § 1964 *et seq.* and 18 U.S.C. § 2255.  This Court has jurisdiction over the causes of action asserted herein and over the parties to this action.  Plaintiff asserts claims under Missouri common law for which this Court has ancillary jurisdiction under 28 U.S.C.S. § 1367.

9.     This Court has jurisdiction because Defendants Householder and Circle of Hope are licensed to do business or transact business in Missouri, and have obtained the benefits of the laws of the State of Missouri and the benefits of the Missouri location for this Girls Ranch.

10.     The torts alleged herein occurred in the State of Missouri in multiple counties with the first injury occurring in Polk County, Missouri.

11.     Venue is proper in United States District Court for the Western District of Missouri, Southwest Division, Springfield, Missouri.

12.     The damages involved in this case well exceed the Court's minimum jurisdictional limits.

## PARTIES

13.     Plaintiff Maggie Drew is an adult woman and a resident of the State of Oklahoma. The incidents alleged herein occurred when Plaintiff was a minor and continued into her majority. Plaintiff is currently 27 years of age.

3

14.     At all times material, Defendant Circle of Hope Girls Ranch and Boarding Schools, Inc. was a corporation doing business in Missouri with its principal place of business located at 20285 E Highway N, Humansville, Missouri.

15.     Defendants Boyd and Stephanie Householder were the schoolmasters and represented to Plaintiff that they were the legal guardians of Plaintiff. They engaged in abuse, harassment, forced servitude, theft, assault, fraud, negligent supervision and hiring, and other tortious acts directed at Plaintiff. In March 2021, they were charged with 102 felony counts of abuse, neglect, endangerment, sexual abuse, and other crimes arising from their administration of the Circle of Hope Girls Ranch and Boarding Schools.

16.     Defendants Boyd and Stephanie Householder worked at Agape Boarding School prior to establishing Circle of Hope Girls Ranch and Boarding School (hereinafter "Circle of Hope").

17.     Defendant Ables was a Director of Circle of Hope Girls Ranch and Boarding School. Ables learned of the abuses meted out at the school by direct report from Amanda Householder in 2008 but took no remedial action and failed to report these actions to the appropriate authorities.

18.     Defendant James Clemenson was the founder and director of Agape Boarding School, a wholly-owned subsidiary of Agape Baptist Church, Inc., of which James Clemenson was also founder and director. Agape Boarding School, Agape Baptist Church (hereinafter "Agape Defendants") and James Clemenson offered substantial support, aiding, and abetting before, during, and after the allegations that form the basis for this complaint.

19.     Clemenson and Agape Boarding School knew of the abuse that was being meted out to the residents of Circle of Hope as they were informed of the abuses by Amanda Householder,

4

the daughter of James and Stephanie Householder. Clemenson and the Agape Defendants took no remedial action and failed to report these actions to the appropriate authorities. The Agape Defendants aided and abetted the abuses of the children at Circle of Hope Girls' Ranch.

## BACKGROUND FACTS APPLICABLE TO ALL COUNTS

20. Maggie Drew arrived at Circle of Hope Girls Ranch on or about October 20, 2007. She was approximately 15 years old at the time. She remained at the School until approximately January 2013.

21. Plaintiff lived in Oklahoma prior to her being taken to Circle of Hope.

22. During her time at Circle of Hope Girls Ranch, she was subjected to physical, sexual, and mental abuse and torture. She was also forced into servitude and required to administer punishments to the children at the Circle of Hope Boarding School on threat of serious bodily injury.

23. When Maggie was approximately 15 years old, the pastor of her church in Oklahoma, Broken Arrow Baptist Temple, accused her falsely of being into sex and drugs. Her father and stepmother believed the pastor, and on his recommendation, took her to Circle of Hope Girls Ranch and Boarding School under the guise of a family trip.

24. When Maggie arrived at Circle of Hope, she was told about the program and the system of shirts. Students started the program wearing a bright orange shirt and jean jumper dress. Above the orange shirts were yellow shirts, then pink shirts, then green, purple, red, and blue grey. Neon was added later in her stay at Circle of Hope.

25. Yellow and black shirts could be given discipline—usually pushups—by the pink shirts if the pink-shirted students believed a rule had been broken. Green shirts were room captains. Green shirts could give anyone under them pushups. They were in charge of supervising work crews.

5

26.     Purple shirts were division leaders.  They ran half of the dorm hallway and were supervisors.  They could give pushups to anyone under them and were trained to restrain other children.  Red shirts and blue grey shirts were designated as staff members.

27.     If a student broke any rules, they could be "busted" to a black shirt.  A black shirt signified sin and rebellion.  If a student was placed in a black shirt, they were not allowed to attend school or do schoolwork; they were not allowed any breaks when they were working; and they were given less food.

28.     During the first month there, a "guide" was assigned to each new student.  The new student was required to remain within three feet of the guide at all times.  If a student moved outside the three-foot zone, the student would be tackled and held down until staff came to restrain that student.

29.     "Restraint" consisted of being tackled and held down by four, sometimes five people.  The student would be thrown to the ground and sat upon by other students, Boyd and Stephanie Householder.  These restraints would last anywhere from a few minutes to hours.

30.     The students who wore higher level shirts were "taught" how to restrain other students by either the Householders or upper-level students.  There was no training in restraint protocols by any professional organization that provides that kind of training, such as MANDT.

31.     Some students were restrained with zip ties being placed around their wrists and ankles and others were handcuffed.

32.     Maggie Drew was restrained by being held down by four individuals including Boyd Householder.  She was later taught how to restrain other students and was threatened with severe with punishment if she refused to do it.

6

33.     During the first thirty days at Circle of Hope, Maggie was not allowed to speak to her father or stepmother.  She also was not allowed to participate in any kind of schooling.  The girls were not allowed to speak to each other and could be disciplined for doing so.

34.     Discipline included beatings, withholding of food or being force fed food, restraint, being placed "on the wall," being required to walk with a Bible on the back of the neck—with greater discipline incurred if it fell off—hours of scripture reading, being required to squat and walk like a duck, quacking, until the pain became excruciating.

35.     Being placed on the wall meant that students were required to stand in front of a wall facing it and read the Bible.  Food was brought to them while they stood at the wall.  They had to ask permission to relieve themselves, shower, or otherwise leave the wall.  They were permitted to move from the wall only at bedtime.  The children were required to be on the wall sometimes for as long as 30 days.  During their time on the wall, they were not allowed to speak to anyone else and they were not allowed to participate in schooling.  Plaintiff was often placed on the wall, the longest being two weeks.

36.     Discipline also included extra chores, extreme physical workouts, loss of personal items, and any other kind of discipline that Boyd or Stephanie Householder created.

37.     Discipline was handed out for failing to say "yes, sir" or being "disrespectful." "Disrespectful" could mean anything depending on the mood of Boyd or Stephanie Householder.

38.     The Householders used the students as non-paid workers.  The girls bucked hay for neighbors and the community, they cleared trees, and dragged brush while on their hands and knees.  They weeded out rows and rows of gardens.  They fed, watered, and otherwise cared for the livestock.   Sometimes Boyd or Stephanie would require them to scrub the floors with

7

toothbrushes. They cleaned out nasty buildings and trailers, moving furniture for the Circle of Hope property and others in the community.

39. The Householders required the girls to carry two five-gallon buckets at a time in the freezing temperatures to water the horses and other animals in the winter.

40. Water breaks were often not allowed in the summer, and in the winter the girls were given only light clothing to wear.

41. The students were assigned excessive chores and work, cleaning, cooking, filing, outdoor work, caring for the animals including bathing, treating injuries, and feeding.

42. The Householders required excessive workouts and pushups. Sometimes, the pushups and workouts would last for hours until the girls were in physical pain and exhausted. Failing to complete the assigned workouts and pushups led to restraint and more pushups.

43. The girls were mentally abused, being told consistently that they were shameful, nobody loved them, and no one would ever care for them.

44. The girls were denied feminine hygiene products; they were not allowed to wear undergarments inside the house; they were not allowed to wear sleep pants and could only wear skirts at any time. When the girls were bailing hay or working in the loft, the Householders would occasionally allow them to wear culottes.

45. Maggie Drew endeavored to follow the rules. Nonetheless, because the rules changed depending upon the mood of the Householders, she was subjected to harsh discipline. In her first two weeks at Circle of Hope, she was given more than 600 pushups to complete.

46. Boyd Householder became more and more solicitous of Plaintiff. She was a purple shirt within the first three months of her arrival.

47. On June 7, 2009, Maggie's father, Lyle Drew, Sr., committed suicide. At the time of his suicide, he had custody of Maggie.

48. When her father died, Stephanie and Boyd Householder had her come with them to the office of a pastor at Bourbon Baptist Church. The pastor told her that her father had shot himself. While at the church, Maggie was prohibited from speaking to anyone else at that church.

49. After her father died, Maggie Drew was prevented from having any contact with her family. The Householders told Maggie Drew that they were her guardians and/or adoptive parents. Maggie Drew, a minor, believed them. The Householders told others, in Plaintiff's earshot, that they had adopted Maggie Drew.

50. The Householders helped Plaintiff get an ID for her social security benefits. Then they took her social security monies from her bank account.

51. Plaintiff's grandfather left her $25,000 for her to go to college. The Householders made her sign papers that gave them that money, under threat.

52. The Householders trained her to do office work and required her to work in the office without pay.

53. Boyd Householder's interest in Plaintiff grew. He began grabbing her buttocks when he passed by. He progressed to putting his hands across her breasts and touching her when she was in the office. He would kiss her and fondle her whenever they were in the office together alone.

54. Maggie Drew reported this behavior to Stephanie Householder. After that report, Plaintiff was placed on the wall for three days and demoted to a green shirt. As a green shirt, Maggie Drew was required to raise her hand if she needed to scratch, pass gas, or engage in other

involuntary bodily functions.  She was given pushups and other punishments if she passed gas either without asking permission or if permission was not granted.

55.     During the time that Maggie Drew was at Circle of Hope, she experienced bodily injury that never received any medical treatment.  She has permanent and lasting damage to her back and chronic pain.

56.     Plaintiff suffered multiple back injuries from bucking hay.  She also fell out of a hay loft and was not given any medical treatment.

57.     Plaintiff has also suffered severe emotional and psychological injuries.  The Householders forced her to participate in restraining the other girls.  She witnessed horrific abuses meted out to the other students.  The Householders used the constant threat of severe abuse to coerce Plaintiff and other students into compliance with their requests.

58.     They also forced her into unpaid labor as their Secretary.  In her time at Circle of Hope, she was paid $100 for the services she provided to them as their Secretary and as a staff member.

59.     The "education" promised by Circle of Hope was a sham.  Plaintiff discovered that the "credits" she earned at the ranch were not accredited hours and did not count toward a high school diploma in any state.

60.     Maggie Drew finally left Circle of Hope after her 20th birthday.

61.     The Householders normalized the abuses that Plaintiff suffered, essentially brainwashing her into believing that they were the only people in the world who cared for her and that she would be unable to care for herself if she left the premises.

10

62.     Circle of Hope and the Householders held themselves out as Independent Fundamentalist Baptist educators across state lines and in interstate commerce. Circle of Hope and the Householders did so for the purpose of benefitting financially from the interactions.

63.     Circle of Hope and the Householders used their positions to engage in physical, sexual, mental abuse, and torture of the girls who were placed at their facility, while charging their parents.

64.     In approximately 2006, the Householders, with the assistance, guidance, and encouragement of Agape Baptist Church, Agape Boarding School, and James Clemenson, opened Circle of Hope Girls Ranch and Boarding School.

65.     In July 2006, the Householders had girls from Kentucky brought to Circle of Hope. In approximately 2007, Plaintiff was brought from Oklahoma to Circle of Hope.

66.     Thereafter, Plaintiff was forced into servitude for Circle of Hope. She was threatened with serious bodily injury if she did not work at Circle of Hope and participate in the punishments of the girls there. She was paid $100 for any of the work that she performed on behalf of Circle of Hope.

67.     Plaintiff was told that law enforcement was employed by Circle of Hope and that she would not be believed and/or would be placed in juvenile detention if she spoke to anyone about her abuse, attempted to run away, or failed to follow their rules.

68.     Plaintiff was terrorized by observing the punishments meted out to the residents of Circle of Hope.

69.     She was required to watch as girls at the Ranch were punched in the face, choked, beaten, and whipped.

11

70.     Plaintiff saw girls being forced into the cold wearing only thin skirts or dresses. Some were required to walk around the yard squatting and quacking like ducks to humiliate them. If they in any way displeased Boyd Householder, he would cut all of their hair off.

71.     She watched as girls were force-fed until they vomited and then force-fed their vomit.

72.     She saw girls punished by having their food withheld.  Food was often used as a leverage over the girls to control them and as a punishment.

73.     Plaintiff and other staff members were required to monitor the girls' use of feminine hygiene products.  The girls were required to show that their pads were bloody before they would be issued a new pad.

74.     Plaintiff lived in the "dorm" with the students at the school.  She heard their screams as they were subjected to punishments by the Householders and the staff at Circle of Hope.

75.     Plaintiff knew no other way of life than this one.  At all times, Plaintiff remained under the thrall and control of the Householders, who she had been told were her guardians or adoptive parents.  She tried her best to please them, even as an adult, as this is the only lifestyle she had known.

76.     In 2013, at the age of 20, Plaintiff finally broke free of Circle of Hope and discontinued all communication with the Householders.

77.     Prior to that discontinuation of contact, Plaintiff was subjected to undue influence causing Plaintiff to become a subservient party without freedom to exercise her own judgment.

78.     Prior to that discontinuation of contact, Plaintiff was forcibly brainwashed, preventing her from acting in her own self-interest.

12

79.     Prior to that discontinuation of contact, Defendants Boyd and Stephanie Householder used threats to the safety of Plaintiff to force Plaintiff into subservience.

80.     James Clemenson, Jeffrey Ables, and Agape received reports about the Householders' inappropriate predation on the students at Agape as well as the school in Florida from which the Householders had come.

81.     Clemenson, Agape, and Ables received direct reports regarding the actions of the Householders.

82.     Defendants Agape, Clemenson, Circle of Hope, and Ables furnished tools and materials to aid and abet the conduct as alleged herein.

83.     After learning of Defendant Householders' wrongful conduct, Defendants Agape, Circle of Hope, Clemenson, and Ables, individually and through their agents, ratified the wrongful conduct described herein.

84.     As a direct result of Defendants' wrongful conduct, Plaintiff has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; has sustained loss of earnings and earning capacity, and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy and counseling.

## COUNT I:  Action under 18 U.S.C. § 1581 *et seq.*
### (All Defendants)

85.     Plaintiff incorporates all paragraphs of this Petition heretofore pleaded as if fully set forth herein.

86.     At the time Plaintiff was taken to Circle of Hope, Plaintiff was approximately 15 years of age.  Plaintiff was approximately 20 years of age when she left Circle of Hope in late 2013.  She is currently 27 years of age.

13

87.     Circle of Hope, Ables in his role as Board Member of Circle of Hope, the Agape Defendants, Clemenson, and Boyd and Stephanie Householder engaged in activities that affected interstate commerce, including transporting of students across state lines, advertising and/or solicitation for students via the internet, conferences, direct advertising and other means across state lines and otherwise engaging in activities that affect interstate commerce.

88.     Defendants Circle of Hope, Boyd and Stephanie Householder placed Plaintiff in a condition of peonage while she resided at Circle of Hope.

89.     Plaintiff was held and worked by lawless methods against her will for the purpose of compelling her to discharge real or alleged obligations, creating a condition of peonage under the 13th Amendment to the United States Constitution.

90.     Defendants Circle of Hope, Boyd and Stephanie Householder knowingly obtained the labor or services of Plaintiff by means of force, threats of force, and threats of physical restraint to her and others in violation of 18 U.S.C. § 1589.

91.     Defendants Circle of Hope, Boyd and Stephanie Householder knowingly obtained the labor or services of Plaintiff by means of serious harm or threats of serious harm to her or others in violation of 18 U.S.C. § 1589(a)(2).

92.     Defendants Circle of Hope, Boyd and Stephanie Householder knowingly obtained the labor or services of Plaintiff by means of threatened abuse of law or legal process in violation of 18 U.S.C. § 1589(a)(3).

93.     Defendants Circle of Hope, Boyd and Stephanie Householder knowingly obtained the labor or services of Plaintiff by means of a scheme, plan, and pattern intended to cause Plaintiff to believe that she or another person would suffer serious harm or restraint in violation of 18 U.S.C. § 1589(a)(4).

94.     Defendants Circle of Hope, Ables, the Agape Defendants, and Clemenson engaged in a joint adventure in establishing Circle of Hope as a sister institution to the Agape defendants. Each of these Defendants benefitted from the participation in the joint adventure as an advertising tool and through jointly sponsored events, bringing notoriety, additional opportunities for fundraising, and prestige to each of the Defendants.

95.     All of the Defendants named in this count acted in reckless disregard of the fact that the venture engaged in the providing of labor through force, physical restraint, threats of physical restraint, serious harm or threats of serious harm to Plaintiff or another, through abuse of law and legal process, and by means of a scheme, plan, or pattern intended to cause Plaintiff to believe that she would suffer serious harm or physical restraint if she failed to provide the labor or services.

96.     Defendants Circle of Hope, Boyd and Stephanie Householder coerced Plaintiff into performing sex acts and/or allowing Boyd Householder to perform sex acts upon her by means of force, threats of force, fraud, and/or coercion.

97.     Defendant Boyd Householder patronized Plaintiff, requiring her to perform sex acts upon him and/or performing sex acts upon her after she attained the age of 14 but had not attained the age of 18 in violation of 18 U.S.C. § 1591.

98.     Defendants Circle of Hope, Ables, Boyd and Stephanie Householder, Clemenson, and the Agape Defendants all received benefits of value from participating in the joint venture in which peonage, slavery, and trafficking in persons occurred. Each Defendant acted knowingly or in reckless disregard of the fact that the venture engaged in these violations.

99. Defendants knew or should have known that Circle of Hope, Boyd and Stephanie Householder were engaging in acts in violation of 18 U.S.C. § 1581 *et seq.* as part of their joint venture.

100. The actions described herein occurred less than ten years after the cause of action arose.

101. As a direct result of Defendants' wrongful conduct, Plaintiff has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation and loss of enjoyment of life; has sustained loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

## COUNT 2: ACTION FOR UNDUE INFLUENCE
### (All Defendants)

102. Plaintiff incorporates all paragraphs of this Petition as if fully set forth herein.

103. Defendants were in a confidential and/or special relationship with Plaintiff by virtue of their positions of authority over her.

104. Defendants exercised coercion, force, and deception upon Plaintiff such that it deprived her of her free agency as set forth in the background facts heretofore pleaded.

105. As a result of the coercion, force, and deception by Defendants upon Plaintiff, Plaintiff surrendered to Defendants the social security proceeds to which she was entitled due to her father's death and her grandfather's gift of funds for her college education.

106. Plaintiff reposed trust and confidence in Defendants as her caretakers, mentors, authority figures, teachers, and confidantes.

107. As fiduciaries or confidants to Plaintiff, Defendants had a duty to obtain and disclose information relating to abuse, harassment, and other inappropriate behavior of

16

Defendants' agents, including Boyd and Stephanie Householder. In their roles as confidantes or fiduciaries, each Defendant owed Plaintiff the duty of trust and loyalty, and the duty to work solely for her benefit.

108.    All Defendants breached their duties to Plaintiff and abused their position of trust and confidence for their own personal gain.

109.    As a direct result of Defendants' breach of their fiduciary duties/special relationship, Plaintiff has suffered, and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; was prevented and will continue to be prevented from performing her daily activities and obtaining the full enjoyment of life; has sustained loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

## COUNT 3: FRAUD AND CONSPIRACY TO COMMIT FRAUD
### (All Defendants)

110.    Plaintiff incorporates all paragraphs of this Petition as if fully set forth herein.

111.    Defendants knew or should have known of the sexual harassment, misconduct, and other inappropriate behavior of their agents, including Defendants Householder as described herein.

112.    Defendants engaged in trickery, deceit, and acts of deluding Plaintiff as set forth in the Background Facts Applicable to All Counts, knowing that Boyd and Stephanie Householder were dangerous.

113.    Defendants misrepresented, concealed, or failed to disclose information relating to sexual and physical misconduct of their agents, including engaging in the following willful acts intended to deceive:

17

a.       telling Plaintiff that she deserved the beatings and other disciplinary acts;

b.       hiding the acts;

c.       hiding the abuses from the Division of Family Services and threatening the students including Plaintiff to prevent them from being disclosed;

d.       refusing to investigate or report the allegations of abuse made to them by students, DFS, former staff members, and others;

e.       other similar acts.

114.    Defendants Circle of Hope, Agape, Clemenson, and Ables continued to place the Defendants Householder in positions allowing them to be in contact with and in supervision over Plaintiff and students following knowledge of their inappropriate behavior.

115.    Defendants ignored reports that Boyd and Stephanie Householder were engaging in inappropriate sexual and physical activity and harassment with vulnerable children.

116.    Defendants deliberately failed to warn, report, or inform any other individuals or organizations about the Householders' use of their positions of power to injure others.

117.    Defendants deliberately misled the public in their communications regarding Circle of Hope and the Householders, holding them out to be in good standing after having received reports of inappropriate behavior on their part.

118.    Defendants knew that they misrepresented, concealed, or failed to disclose information they had the duty to disclose relating to misconduct of their agents.

119.    Defendants had superior knowledge or information not within the fair and reasonable reach of Plaintiff and failed to disclose that information.

120.    Defendants knew of the existence of the torts of sexual and physical abuse and failure to supervise.

18

121.    Defendants used deception to conceal these torts from Plaintiff and all who would act on her behalf as a minor.

122.    Plaintiff relied upon that deception and concealment remaining ignorant that torts were committed upon her.

123.    Defendants used deception, coercion, and threats to wrest from Plaintiff her inheritance and her social security benefits due to her by virtue of her father's death.

124.    Upon information and belief, Defendants, in concert with each other, with the intent to conceal and defraud, conspired and came to a meeting of the minds whereby they would misrepresent, conceal, or fail to disclose information relating to the misconduct of Defendants Boyd and Stephanie Householder, prohibiting public scrutiny or investigation into their acts of misconduct.

125.    By so concealing, Defendants committed at least one act in furtherance of the conspiracy.

126.    Defendants' actions and/or inactions were willful, wanton, and reckless for which punitive damages and/or damages for aggravating circumstances are appropriate.

127.    As a direct result of Defendants' fraud and conspiracy, Plaintiff has suffered, and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; was prevented and will continue to be prevented from performing her daily activities and obtaining the full enjoyment of life; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

### COUNT 4:  CONSTRUCTIVE FRAUD
**(All Defendants)**

128.    Plaintiff incorporates all paragraphs of this Petition as if fully set forth herein.

19

129.    By virtue of the special relationship between Plaintiff and the Defendants, as set forth in the Background Facts Applicable to All Counts, and Count 2, Defendants had a special duty to Plaintiff to protect Plaintiff and others from the abuses described in the Background Facts Applicable to All Counts.

130.    Instead of protecting Plaintiff and others from known perpetrators, Defendants used their positions of power and authority to manipulate, brainwash, silence, and cow Plaintiff into servitude and quiescence.

131.    Defendants failed to disclose and/or intentionally disguised Defendants Householders' abuses and history of abuse of others.

132.    Defendants failed to disclose their knowledge of the Householders' history of using their positions for physical and sexual abuse and assault.

133.    Defendants engaged in such acts knowingly and/or intentionally.

134.    As a result, Defendants breached their fiduciary duties to Plaintiff by engaging in the willful, reckless, and wanton conduct described herein, by failing to disclose information regarding the injurious nature of the abuse, and/or in taking acts to conceal any such information.

135.    As a direct result of Defendants' wrongful conduct, Plaintiff has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; and will continue to be prevented from performing her daily activities and obtaining the full enjoyment of life; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

## COUNT 5: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (All Defendants)

136.    Plaintiff incorporates all paragraphs of this Petition as if fully set forth herein.

20

137.     Defendants lied to Plaintiff, required her to join in the discipline of other students at risk of her bodily safety and that of her brother, tortured Plaintiff through extreme physical abuse, forced Plaintiff into servitude, refused to protect Plaintiff when she discussed the abuses, instead setting her up for beatings that gratified the sexual desires of Boyd and Stephanie Householder, and placed Plaintiff in the zone of danger.

138.     Defendants engaged in extreme and outrageous conduct, intended to cause or committed in reckless disregard of the probability of causing emotional distress and harm.

139.     Defendants engaged in unconscionable, outrageous conduct beyond all possible bounds of decency and utterly intolerable in a civilized society.  Defendants' conduct caused Plaintiff severe emotional distress of such a nature that no reasonable person in a civilized society could be expected to endure it.

140.     Plaintiff suffered medically significant and medically diagnosable distress as a result of Defendants' actions as set forth in the Background Facts Applicable to All Counts.

141.     As a result of the above-described conduct, Plaintiff has suffered, and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress that is medically diagnosable and significant, embarrassment, loss of self-esteem, disgrace humiliation, and loss of enjoyment of life; was prevented and will continue to be prevented from performing her daily activities and obtaining the full enjoyment of life; has sustained loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

### COUNT 6:  NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
**(Defendants Agape, Circle of Hope, Clemenson, and Ables)**

142.     Plaintiff incorporates all paragraphs of this Petition as if fully set forth herein.

143. Defendants knew or should have known that Plaintiff was being abused by Boyd and Stephanie Householder.

144. Defendants engaged in affirmative acts directed toward Plaintiff that caused her to believe that the abuses were her fault and normal.

145. Defendants failed to report or warn Plaintiff about the actions of Boyd and Stephanie Householder.

146. Defendants engaged in actions that alerted the Householders that Plaintiff and/or other students had reached out with questions about the abuses, causing Plaintiff and other students to be further beaten and tortured.

147. Defendants placed Plaintiff in the zone of danger when others were being tortured and/or abused by the Householders.

148. The Defendants should have realized that their conduct involved an unreasonable risk of causing Plaintiff emotional distress.

149. Plaintiff suffered emotional distress or mental injury that is medically diagnosable and medically significant.

150. As a result of the above-described conduct, Plaintiff has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; was prevented and will continue to be prevented from performing her daily activities and obtaining the full enjoyment of life; has sustained loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

## COUNT 7:NEGLIGENCE
### (All Defendants)

151.    Plaintiff incorporates all paragraphs of this Petition as if fully set forth herein.

152.    Defendants had a duty to protect those served by their schools from known harm by third parties.

153.    Upon information and belief, Defendants, by and through their agents, servants, and employees, knew or reasonably should have known of Boyd and Stephanie Householder's dangerous and exploitative propensities and/or that they were unfit agents, and despite such knowledge, failed to take any action.

154.    Defendants breached their duty to protect Plaintiff when they failed to protect Plaintiff from the abuse and undue influence described herein.

155.    As a direct result of the acts or omissions described herein, Plaintiff has suffered, and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress that are medically diagnosable and significant, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; was prevented and will continue to be prevented from performing her daily activities and obtaining the full enjoyment of life; has sustained loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

## COUNT 8:  NEGLIGENT SUPERVISION OF CHILDREN
### (All Defendants)

156.    Plaintiff incorporates all paragraphs of this Petition as if fully set forth herein.

157.    Defendants all had duties, individually and in their capacities as managers and directors of Circle of Hope and Agape, to supervise the children under their care.

158.    Defendants knew or should have known of the danger presented by Boyd and Stephanie Householder.

159.     Defendants failed to supervise Plaintiff, causing her injuries.

160.     As a result of the above-described acts, Plaintiff has suffered and continues to suffer shock, physical injuries, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, relationship issues, disgrace, humiliation, and loss of enjoyment of life; was prevented and will continue to be prevented from performing her daily activities and obtaining the full enjoyment of life; has lost earnings and earning capacity; and/or has incurred and may continue to incur expenses for medical and psychological treatment, therapy, and counseling.

## COUNT 9:  INTENTIONAL FAILURE TO SUPERVISE

161.     Plaintiff incorporates all paragraphs of this Petition as if fully set forth herein.

162.     At all times material, Defendants Agape, Circle of Hope, Clemenson, and Ables were the supervisors and employers of Boyd and Stephanie Householder.

163.     Defendants were aware of previous misconduct by the Householders and other staff with Circle of Hope and knew that future harm was certain or substantially certain to result without proper supervision.

164.     Defendants disregarded the known risk of sexual abuse by the Householders.

165.     Defendants' inaction caused injury to Plaintiff.

166.     Plaintiff was sexually abused on the property owned and operated by Defendants and/or was abused on premises that the Householders were allowed on solely due to their status.

167.     Defendants knew or should have known that sexual misconduct by their employees and/or designated agents would cause or was substantially certain to cause those abused harm.

168.     Despite the risk posed by Defendants Householder, Defendants continued to place them in positions in which they would have access to and power over those whom the Householders abused.

24

169. Despite the risk posed by the Defendants Householder, Defendants ratified their actions by approving and paying for travel expenses and other expenses associated with outings with students, encouraging contact with students after knowing of the Householders' proclivities, and allowing the Householders to train, mentor, guide, and nurture young students.

170. By engaging in these actions, Defendants disregarded the risk posed by the Defendants Householder.

171. As a result of Defendants' failures to properly supervise Defendants Boyd and Stephanie Householder, Plaintiff was injured and has suffered, and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress that are medically diagnosable and significant, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; was prevented and will continue to be prevented from performing her daily activities and obtaining the full enjoyment of life; has sustained loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

## COUNT 10:  CHILDHOOD SEXUAL ABUSE
### (Boyd Householder)

172. Plaintiff incorporates all paragraphs of this Petition as if fully set forth herein.

173. Boyd Householder engaged in "childhood sexual abuse" as defined by R.S.Mo. 537.046 while Plaintiff was under 18 years of age.

174. As a result of that sexual abuse, Plaintiff has suffered severe and long-term injuries.

175. As a result the acts of Defendant Boyd Householder, Plaintiff was injured and has suffered, and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress that are medically diagnosable and significant, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; was

25

prevented and will continue to be prevented from performing her daily activities and obtaining the full enjoyment of life; has sustained loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

**COUNT 11: NEGLIGENT FAILURE TO WARN**
**(Agape Defendants, Clemenson, Ables, and Stephanie Householder)**

176.     Plaintiff incorporates all paragraphs of this Petition as if fully set forth herein.

177.     Defendant Ables was a Director of Circle of Hope.  As a member of the Clergy and an individual with responsibility for the care of children, as well as a volunteer for a program that offers support services to assist in the care and custody of a child, Ables had a duty to report suspicions of childhood abuse to proper authorities.

178.     Defendant Ables, in his position as Director of Circle of Hope, had a special relationship to both Plaintiff and to Boyd and Stephanie Householder.

179.     Amanda Householder, the daughter of Boyd and Stephanie Householder, reported to Defendant Ables, in his position as Director of Circle of Hope, the abuses that were occurring at Circle of Hope.

180.     Defendant Ables knew or should have known that Boyd and Stephanie Householder posed a serious danger to the students at Circle of Hope, including Plaintiff.

181.     Defendant Ables had a duty to warn the victims or their parents or guardians of the dangers that Boyd and Stephanie Householder posed to those students.

182.     Defendant Ables not only failed to warn the victims of Boyd and Stephanie Householder of their danger, but he engaged in activities that silenced Amanda Householder and other victims of Boyd and Stephanie Householder including without limitation:

     a.     Telling Amanda Householder that she was not telling the truth;

     b.     Warning Boyd and Stephanie Householder of Amanda's allegations;

26

c.      Allowing Amanda Householder to be subjected to severe punishment as a result of her reports of abuse;

d.      Failing to take any action, in his role as director of Circle of Hope, to investigate, report, warn, or otherwise protect the girl;

e.      Other similar actions that had the effect of silencing the allegations of abuse.

183.    Defendant Ables provided substantial assistance or encouragement to the Householders' breach of their duties to the students at Circle of Hope, including the Plaintiff.

184.    James Clemenson and the Agape Defendants received reports of abuses by Stephanie and Boyd Householder before Circle of Hope was opened.

185.    James Clemenson and the Agape Defendants were the primary benefactors for Circle of Hope, providing training, funding, emotional and operational support, and entering into a joint venture with the Householders and Circle of Hope.

186.    Amanda Householder and other students reported to James Clemenson and/or other directors of the Agape Defendants that the Householders were engaging in physical, emotional, and sexual abuse of students.

187.    Instead of reporting the abuses to appropriate authorities, Clemenson and/or other directors of the Agape Defendants punished those who reported, encouraged the Householders to punish those who reported, and otherwise covered up the allegations of abuse that had been leveled against the Householder Defendants.

188.    Despite having received specific reports of abuse by Amanda Householder and others prior to the opening of Circle of Hope, Clemenson and the Agape Defendants forged ahead with the joint venture with Circle of Hope and the Householder Defendants.

189.    Defendants Clemenson and Agape Defendants, by virtue of their special relationships with both the Householder Defendants and Amanda Householder, had a duty to report the abuses for investigation to proper authorities and to warn students and prospective students of the substantial danger posed by the Householders and Circle of Hope.

190.    Defendants Clemenson and the Agape Defendants provided substantial assistance or encouragement to Householders' breach of their duties to the students at Circle of Hope, including the Plaintiff.

191.    Defendant Clemenson, in his position as Chairman of Agape, the employer of the Householders and trusted adult and teacher of Amanda Householder, had a special relationship to both Plaintiff and to Boyd and Stephanie Householder.

192.    As a result the acts of Defendants, Plaintiff was injured and has suffered, and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress that are medically diagnosable and significant, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; was prevented and will continue to be prevented from performing her daily activities and obtaining the full enjoyment of life; has sustained loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all issues triable in this case.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff asks that this Court award judgment against Defendants as follows:

1.     Awarding compensatory, punitive, and all other damages to which she is entitled in favor of Plaintiff against Defendants for damages sustained as a result of the wrongdoings of Defendants, together with interest thereon;

2.     Awarding Plaintiff her costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys, experts, and reimbursement of Plaintiff's and counsel's expenses as allowed by 18 U.S.C. § 1595 and any other relevant law.

3.     Granting such other and further relief as the Court deems appropriate and just.

Respectfully submitted,

*/s/ Rebecca M. Randles*
REBECCA M. RANDLES                    MO #40149
**RANDLES MATA, LLC**
851 NW 45th Street
Suite 310
Gladstone, Missouri 64116
(816) 931-9901
(816) 931-0134 (FAX)
rebecca@randlesmatalaw.com

ATTORNEY FOR PLAINTIFF

29