IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| MAGGIE DREW, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 6:22-cv-03211-MDH |
| BOYD HOUSEHOLDER, et al., | ) |
| Defendants. | ) |

## ORDER

Before the Court is Defendants Agape Boarding School and Agape Baptist Church Inc.'s ("Agape Defendants'") Motion to Dismiss. The matter is fully briefed and this Court has considered all argument. For reasons herein, Defendants' Motion is **GRANTED IN PART AND DENIED IN PART**.

## BACKGROUND

According to the First Amended Petition, Plaintiff resided at Circle of Hope Boarding School from approximately October 20, 2007 until January 2013, when Plaintiff left at the age of twenty. Plaintiff was sent to Circle of Hope by her father and stepmother on the recommendation of Plaintiff's pastor at a Baptist church in Oklahoma. According to the First Amended Petition, Circle of Hope held itself out as a fundamentalist Baptist school for girls and church, recruiting students from around the country. While at the school, Plaintiff alleges was subjected to various forms of sexual, physical, and emotional abuse. Plaintiff likewise contends she received inadequate and unaccredited formal instruction, causing her to fall behind in school. The Householder Defendants, schoolmasters at Circle of Hope, allegedly took $25,000 and Social Security money

1

from Plaintiff under threat. Following the death of Plaintiff's father, the Householder Defendants allegedly convinced Plaintiff they were her legal guardians, though this was not true. The alleged abuse Plaintiff suffered continued throughout her time at Circle of Hope. In March 2021, the Householder defendants were charged with 102 counts of, *inter alia*, abuse, neglect, endangerment, and sexual abuse arising from their conduct as administrators at Circle of Hope. Plaintiff's First Amended Petition brings eleven counts total and names seven total defendants.

In addition to Circle of Hope as well as Boyd and Stephanie Householder, the Circle of Hope schoolmasters, Plaintiff also lists as defendants Jeffrey Ables, James Clemenson, Agape Baptist Church, Inc., and Agape Boarding School. According to the First Amended Petition, James Clemenson is "the founder and director of Agape Boarding School, a wholly-owned subsidiary of Agape Baptist Church, Inc., of which James Clemenson was also founder and director. Plaintiffs claim Agape Boarding School, Agape Baptist Church and James Clemenson offered substantial support, aiding, and abetting before, during, and after the allegations that form the basis for this complaint." (Doc. 43 ¶ 18). More specifically, the First Amended Petition alleges that the Householder Defendants originally worked for James Clemenson at nearby Agape Baptist Church and Agape Boarding School, an all-male counterpart to Circle of Hope. In 2006, the Agape Defendants and Clemenson assisted the Householder Defendants in creating and opening Circle of Hope. Clemenson, according to the First Amended Petition, served as an advisor to the Householder Defendants on issues of discipline. Plaintiff further alleges that the Circle of Hope, the Agape Defendants, and Clemenson created Circle of Hope as a sister institution to the Agape Defendants and the two schools and their administrators mutually benefited one another in the form of advertising and fundraising. (Doc. 44 at ¶ 105). [1]

---

[1] Plaintiff has not explicitly alleged vicarious liability between Agape Defendants and James Clemenson. Neither party addressed this issue in the briefing on this motion and therefore no full analysis is provided in this opinion. However, it is conceivable that Plaintiff's factual allegations as to Clemenson's involvement with Agape Defendants are sufficient to make Agape Defendants liable for Clemenson's conduct through various liability theories. For purposes of this opinion, this Court has considered only Plaintiff's allegations specifically regarding the Agape Defendants.

**STANDARD**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court ordinarily will not consider materials outside of the pleadings, but "[i]n a case involving a contract, the court may examine the contract documents in deciding a motion to dismiss." *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (quotation marks and citation omitted).

In analyzing a motion to dismiss, the Court must "accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party, . . . but [is] not bound to accept as true threadbare recitals of the elements of a cause of action, supported by mere conclusory statements or legal conclusions couched as factual allegations." *McDonough v. Anoka Cnty.*, 799 F.3d 931, 945 (8th Cir. 2015) (quotation marks and citations omitted).

**DISCUSSION**

**I.   The First Amended Petition's Count One Adequately States a Claim Under 18 U.S.C. § 1581 *et seq*. Against Agape Defendants**

Agape Defendants argue that Plaintiff has failed to state a § 1581 *et seq*. claim because Plaintiff failed to allege specific facts occurring after 2008, when the relevant statutory provision became active, and the statute does not apply retroactively. Agape Defendants also argue that Plaintiff has failed to allege facts sufficient to demonstrate a joint venture or common enterprise involving Agape Defendants. This Court will address each argument in turn.

Plaintiff brings her Count One allegations against Defendants under 18 U.S.C. § 1581 *et seq*. Specifically, 18 U.S.C. § 1595, often referred to as the Trafficking Victims Protection Reauthorization

Act ("TVPRA"), provides a private right of action for human trafficking victims to sue their traffickers. On December 23, 2008, this right of action was expanded, allowing suits against not only traffickers themselves, but also those who knowingly benefit from a trafficking venture. This additional language is referred to as the "beneficiary prong" of the TVPRA. Following the 2008 amendments, the law, in pertinent part, provides as follows.

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees. 18 U.S.C. § 1595(a)

Though the Eighth Circuit has not weighed in on the issue, other courts generally agree that 18 U.S.C § 1595(a)'s beneficiary prong does not apply to conduct occurring before the statute was enacted. *See H.G. v. Inter-Cont'l Hotels Corp.*, 489 F. Supp. 3d 697, 710 (E.D. Mich. 2020) (TVPRA financial beneficiary prong does not apply retroactively); *T.P. v. Wyndham Hotels & Resorts, Inc.*, No. 2:21-CV-04933, 2022 WL 17363234, at *5 (S.D. Ohio Dec. 1, 2022) (same); *Griffin v. Alamo*, No. 4:14-CV-4065, 2016 WL 7391046, at *4 (W.D. Ark. Dec. 21, 2016) (same). These courts found no retroactive application because of a strong "presumption against retroactive legislation…deeply rooted in our jurisprudence." *Landgraf v. USI Film Prod.*, 511 U.S. 244, 265 (1994). They also reasoned that the TVPRA lacks language evidencing congressional intent for retroactive application and that retroactive application would expand civil liability for past conduct. *See Landgraf* at 280 (when allegations implicate later-enacted federal statute, courts first consider whether congress has expressly proscribed statute's reach, and if not, practical effects of retroactivity). This Court agrees. Therefore, to the extent Plaintiff alleges liability on the part of Agape Defendants arising from conduct prior to December 23, 2008, such claims are dismissed.

4

Agape Defendants next argue that Plaintiff has failed to allege facts sufficient to demonstrate a joint venture or common enterprise from which Agape Defendants benefited, particularly with respect to factual allegations occurring after the 2008 enactment of the TVPRA's beneficiary prong. The Eighth Circuit has also not established what constitutes a joint venture under § 1595(a). The Eleventh Circuit, however, recently found a venture under this statute to require allegations that the beneficiary "took part in a common undertaking or enterprise involving risk and potential profit." *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 725 (11th Cir. 2021). Missouri law provides that the elements of a joint venture are: "(1) an express or implied agreement among members of the association; (2) a common purpose to be carried out by the members; (3) a community of pecuniary interest in that purpose; and, (4) each member has an equal voice or an equal right in determining the direction of the enterprise." *Ritter v. BJC Barnes Jewish Christian Health Sys.*, 987 S.W.2d 377, 387 (Mo. Ct. App. 1999). Collectively, it appears that, at a minimum, a joint venture requires parties to be involved in a single enterprise that involves sharing profits and losses. This is consistent with the definition advanced by Plaintiff of a joint venture as "an association of two or more persons to carry out a single business enterprise for profit, for which purpose they combine their property, money, effects, skill, and knowledge." (Doc. 48 at 4).

The First Amended Petition alleges that Agape Defendants and others "engaged in a joint adventure in establishing Circle of Hope as a sister institution to the Agape Defendants. Each of these Defendants benefitted from the participation in the joint adventure as an advertising tool and through jointly sponsored events, bringing notoriety, additional opportunities for fundraising, and prestige to each of the Defendants." (Doc. 43 at ¶ 105). The Amended Petition does not specifically elaborate on the definition of "sister institution," but Plaintiff does allege that Defendant Clemenson, who she claims founded and directed the Agape Defendants, played an active role in

creating and managing Defendant Circle of Hope Ranch and Boarding School. (Doc. 43 at ¶¶ 66-69). The Petition also alleges that the Agape Defendants and others "received benefits of value from participating in the joint venture in which peonage, slavery, and trafficking in persons occurred." (Doc. 43at ¶ 109). While Plaintiff offers only limited allegations as to the Agape Defendants' specific role in management and decision making at Circle of Hope, Plaintiff characterizes the Agape Defendants as "consultants," indicating some level of influence and control. (Doc. 43 at ¶ 175). Though Plaintiff's allegations remain general with respect to the timing of the alleged abuse, the First Amended Petition is sufficiently plain that the misconduct persisted throughout Plaintiff's time at Circle of Hope, which ended in January 2013. Nonetheless, the First Amended Petition's allegations are sufficient to state a claim for possible violation of 18 U.S.C. § 1595(a). This is especially true where, as here, the Eighth Circuit has not explicitly defined joint enterprise under § 1595(a) and where all reasonable conclusions must be drawn in Plaintiff's favor. Accordingly, to the extent Plaintiff's relevant factual allegations occurred after December 23, 2008, her Count One claims for § 1595(a) violation are not dismissed.

II. **Plaintiff has Failed to State a Claim for "Undue Influence/Coercive Persuasion/Violation of Fiduciary Duty" Against Agape Defendants Under Count Three**

Plaintiff alleges under Count Two a claim against all Defendants, including Agape Defendants, for "Undue Influence/Coercive Persuasion/Violation of Fiduciary Duty." Count Two generally focuses on Plaintiff's Social Security income following her father's death. Plaintiff alleges, "As a result of the coercion, force, and deception by Defendants upon Plaintiff, Plaintiff surrendered to Defendants the social security proceeds to which she was entitled due to her father's death and her grandfather's gift of funds for her college education." (Doc. 43 at ¶ 116). Plaintiff

6

elaborates that, following Plaintiff's father's death, Householder Defendants "helped Plaintiff get an ID for her social security benefits. Then they took her social security monies from her bank account. Plaintiff's grandfather left her $25,000 for her to go to college. The Householders made her sign papers that gave them that money, under threat." (Doc. 43 at ¶¶ 50-51). Agape Defendants first argue that Plaintiff's claim of "Undue Influence/Coercive Persuasion" fails because "undue influence is an affirmative defense to contract formation and coercive persuasion is not a recognized tort." (Doc. 45 at 6).

As an initial matter, it remains unclear what Plaintiff means with respect to the coercive persuasion reference in the title of Count Two. To the extent Plaintiff attempts to assert a cause of action for "coercive persuasion," this Court agrees with Agape Defendants that this is not recognized as an independent claim under Missouri law.

As to undue influence, Agape Defendants are not strictly correct because undue influence serves not only as an affirmative defense to contract formation, but perhaps most commonly a basis for plaintiffs seeking to void a will or trust. *See, e.g., Smith v. Smith*, 623 S.W.3d 662 (Mo. Ct. App. 2021) (affirming lower court's invalidation of trust amendment based on successor co-trustee's undue influence); *Cima v. Rhoades*, 416 S.W.3d 320, 324-25 (Mo. Ct. App. 2013) (describing burden shifting in case challenging validity of trust based on benefactor's lack of mental capacity from undue influence). Nothing in the language of Count Two, or any part of the First Amended Petition for that matter, implicates a challenge to a will or trust. Further, nothing within Count Two could reasonably indicate that Plaintiff has somehow attempted to allege fraudulent inducement with respect to the alleged contract that caused Householder Defendants to receive Plaintiff's inheritance money. Accordingly, to the extent Plaintiff has attempted to assert a claim for undue influence under Count Two, such a claim is likewise dismissed.

With respect to Count Two's violation of fiduciary duty allegation, Agape Defendants argue Plaintiff has failed to allege sufficient facts to establish a fiduciary relationship between Plaintiff and Agape Defendants. Under Missouri law, breach of fiduciary duty requires: "1) the existence of a fiduciary relationship between the parties, 2) a breach of that fiduciary duty, 3) causation, and 4) harm." *Robert T. McLean Irrevocable Tr. v. Patrick Davis, P.C.*, 283 S.W.3d 786, 792–93 (Mo. Ct. App. 2009) (internal citations omitted). Plaintiffs may establish a fiduciary relationship as a matter of law based on a formal relationship (e.g. attorney-client) or such a relationship "may arise as a result of the special circumstances of the parties' relationship where one places trust in another so that the latter gains superiority and influence over the former." *Shervin v. Huntleigh Sec. Corp.*, 85 S.W.3d 737, 740–41 (Mo. Ct. App. 2002) (internal citations omitted). In determining whether a fiduciary relationship exists based on special circumstances, courts look to whether "trust is reposed with respect to property or business affairs of the other." *Id*.

Plaintiff, however, pleads no facts specifically pertinent to Agape Defendants in support of these broad, conclusory allegations about a fiduciary relationship. Plaintiff's complaint is clear that she was a student and housed at Circle of Hope, not with the Agape Defendants. (Doc. 43 at ¶ 23). Despite Plaintiff's general allegations (discussed previously) of a joint venture between Circle of Hope and the Agape Defendants, there is no specific factual allegation Plaintiff reposed trust "with respect to property or business affairs" with Agape Defendants specifically, vis-à-vis Circle of Hope and/or the Householders. *Shervin* at 740-41. The alleged existence of a joint venture between Agape Defendants and Circle of Hope does not in itself establish a fiduciary relationship between Plaintiff and Agape defendants, even if Plaintiff had a fiduciary relationship with Circle of Hope. Similarly, to the extent that Plaintiff alleges Agape Defendants acted as consultants to

Circle of Hope and the Householders, this is insufficient to establish Plaintiff somehow reposed trust with Agape Defendants "with respect to property or business affairs of the other." *Shervin* at 740-41. Accordingly, Plaintiff's Count Two claim for breach of fiduciary relationship is dismissed.

### III. Plaintiff has Failed to State a Claim for Fraud and Conspiracy to Commit Fraud Under Count Three Only to the Extent those Allegations Rest on Failure to Report

Under Count Three, Plaintiff alleges fraud and conspiracy to commit fraud against all Defendants. Specifically, Plaintiff alleges Defendants committed fraud by, inter alia, "telling Plaintiff she deserved the beatings," "hiding the abuses from the Division of Family Services," and "refusing to investigating reports of abuse." (Doc. 43 at ¶ 124). Plaintiff further alleges that "Defendants deliberately misled the public in their communications regarding Circle of Hope and the Householders, holding them out to be in good standing after having received reports of inappropriate behavior." (Doc. 43 at ¶ 128). This somehow caused Plaintiff to rely "on that deception and concealment remaining ignorant that torts were committed upon her." (Doc. 43 at ¶ 135). Ultimately, this led to additional injury in the form of, *inter alia*, additional abuse suffered and corresponding mental, physical, and emotional pain. (Doc. 43 at ¶ 141). To be clear, Plaintiff has not alleged that she was induced to come to Circle of Hope originally in 2007 as a result of Agape Defendants' failure to make clear to Plaintiff the abuse she would suffer. Nor has Plaintiff alleged conspiracy based on Agape Defendants' role, if any, in failing to provide Plaintiff with the education promised. Rather, Plaintiff's theory of fraud and conspiracy, as this Court understands it, is that Plaintiff failed to understand that torts were being committed against her because all Defendants, including Agape Defendants, failed to report abuses observed to the appropriate

9

authorities. This in turn caused Plaintiff to suffer additional injuries by, ostensibly, spending additional time at Circle of Hope.

Under Missouri law, fraud requires "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity; (5) the speaker's intent that the representation be acted upon by the other party; (6) the other party's ignorance of its falsity and right to rely on its truth; which (7) proximately caused injury." *Hanrahan v. Nashua Corp.*, 752 S.W.2d 878, 883 (Mo. Ct. App. 1988). In cases of alleged fraudulent omission, "a party's silence in the face of a legal duty to speak replaces the first element: the existence of a representation. *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 765 (Mo. 2007).

Missouri case law is clear that failure to report or investigate reports of abuse under RSMO § 210.115 cannot serve as a basis for a civil lawsuit, because § 210.115 creates only a public rather than private duty. *Nelson v. Freeman*, 537 F. Supp. 602, 611 (W.D. Mo. 1982). In her briefing on the present motion, Plaintiff contends that fraud occurred because Defendants failed to report the alleged abuse to authorities as required by RSMO § 210.115. (Doc. 48 at 6). Plaintiff, however, also argues that fraud occurred because Agape Defendants and others "affirmatively hid children from DFS/The Children's Division to prevent the state from investigating claims of abuse against the Householders" (Doc. 48 at 6). Plaintiff's First Amended Petition alleges the same. (Doc. 43 at ¶ 124). To the extent Plaintiff's Count Three claims against Agape Defendants depend on an alleged failure to report abuse under § 210.115, such claims are therefore dismissed. However, to the extent the conspiracy allegation rests on a theory that Agape Defendants and others affirmatively hid children, possibly including Plaintiff, Plaintiff's Count Three fraud allegation is not dismissed at this time.

10

Similarly, the absence of fraud also renders insufficient Plaintiff's conspiracy allegation, because "if the underlying tort claim fails to state a cause of action, then a claim of conspiracy based on that tort claim will not stand." *M.W. v. S.W.*, 539 S.W.3d 910, 915 (Mo. Ct. App. 2017). Therefore, to the extent Plaintiff's Count Three claims are based on a failure to report abuse under RSMO § 210.115, Plaintiff's Count Three conspiracy claim is likewise dismissed. To the extent, however, Plaintiff rests her conspiracy on an alternative basis, like the alleged affirmative hiding of children to prevent investigation, Plaintiff's Count Three conspiracy allegation is not dismissed.

### IV. Plaintiff Fails to State a Claim for Constructive Fraud

Under Missouri law, constructive fraud is simply another name for breach of fiduciary duty. *Klemme v. Best*, 941 S.W.2d 493, 495 (Mo. 1997) ("constructive fraud is a long-recognized cause of action…Missouri courts typically label these claims as breach of fiduciary duty") (internal citations omitted). Plaintiff has already alleged breach of fiduciary duty. Plaintiff's allegations under Count Four for constructive fraud are substantially similar to her allegations under Count Two for breach of fiduciary duty. Therefore, Plaintiff's constructive fraud claim is dismissed for redundance. Plaintiff has failed to state a claim for breach of fiduciary duty for reasons previously discussed.

### V. Plaintiff has Sufficiently Stated a Claim for Intentional Infliction of Emotional Distress

Under Count Five, Plaintiff alleges all Defendants committed intentional infliction of emotional distress by lying to Plaintiff, forcing her to discipline other students, torturing Plaintiff through physical abuse, and subjecting Plaintiff to sexual abuse. (Doc. 43 at ¶ 151). Though Plaintiff's specific allegations under Count Five fail to distinguish which Defendant is responsible for which specific allegations, elsewhere the First Amended Petition clarifies that allegations of

11

affirmative sexual and physical abuse and torture remain limited to Circle of Hope and the Householder Defendants. (Doc. 43 at ¶¶ 23-63). Plaintiff's allegations regarding the Agape Defendants appear limited to failure to report or intervene, despite knowledge of abuses suffered by Plaintiff and other Circle of Hope students/residents. (Doc. 43 at ¶¶ 19, 64-65, 77, 91-94). This understanding of the Agape Defendants' specific role in the alleged intentional infliction of emotional abuse finds further support in Plaintiff's briefing on this motion, in which Plaintiff argues that Agape Defendants engaged in intentional infliction of emotional distress insofar as they failed to take action on reports of sexual abuse perpetuated by the Householder Defendants and Circle of Hope.

A claim for intentional infliction of emotional distress under Missouri law requires: "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; and (3) the conduct caused severe emotional distress resulting in bodily harm." *Diehl v. Fred Weber, Inc.*, 309 S.W.3d 309, 321 (Mo. Ct. App. 2010). Courts look to whether the character and degree of the complained-of conduct "is beyond all possible bounds of decency and is to be regarded as atrocious and utterly intolerable in a civilized community." *Id*. Crucially, the complained-of conduct must also be "intended only to cause extreme emotional distress to the victim." *Gibson v. Brewer*, 952 S.W.2d 239, 249 (Mo. 1997) (internal citations omitted).

The Missouri Supreme Court has held that a religious institution's failure to report instances of alleged abuse, does not amount to "atrocious" and "utterly intolerable," as is required under Missouri law. In *Gibson*, the plaintiff alleged that the Kansas City Diocese committed intentional infliction of emotional distress by "allowing the assault to happen, and in covering up the incident and other such incidents by defendant Brewer and other priests, by failing to properly investigate, and in their treatment of the Gibsons after the assault." *Gibson v. Brewer*, 952 S.W.2d

12

239, 249 (Mo. 1997). The Missouri Supreme Court, however, found that the *Gibson* plaintiff's "allegations do not support the inference that the Diocese's sole purpose in its conduct was to invade the Gibsons' interest in freedom from emotional distress." *Id*. In the present case, however, it is not obvious from the face of the First Amended Petition alone, that Plaintiff's allegations fail to support an inference that Agape Defendants' only intent was to cause Plaintiff severe emotional distress. Plaintiff alleges, for example, "Defendants' conduct caused Plaintiff severe emotional distress of such a nature that no reasonable person in a civilized society could be expected to endure it." (Doc. 43 at 153). Drawing all reasonable inferences in Plaintiff's favor, it is conceivable this allegation suggests Agape Defendants' only intent was the specific intent to cause Plaintiff severe emotional distress. Plaintiff will have to discover more specific, pertinent examples of this nature to survive summary judgment. Accordingly, Plaintiff's Count Five intentional infliction of emotional distress claim is not dismissed.

### VI. Impact of the First Amendment of the United States Constitution on Plaintiff's Negligence-Based Claims in Counts Six, Seven, Eight, and Eleven

Count Six of the First Amended Petition alleges negligent infliction of emotional distress, Count Seven alleges general negligence, Count Eight alleges negligent supervision of students, and Count Eleven alleges negligent failure to warn. Agape Defendants argue that the establishment clause of the First Amendment of the United States Constitution prevents Plaintiff's negligence-based claims in Counts Six, Seven, Eight, and Eleven. The establishment clause provides that, "Congress shall make no law respecting an establishment of religion…" U.S. Const., Amend. I. The First Amendment applies to individual states through the Fourteenth Amendment. *Cantwell v. State of Connecticut*, 310 U.S. 296, 303 (1940). The First Amendment's concern for state power has been interpreted broadly, "including judicial decision on a state's common law." *Gibson v.*

13

*Brewer*, 952 S.W.2d 239, 246 (Mo. 1997) (citing *Kreshik v. Saint Nicholas Cathedral,* 363 U.S. 190, 191 (1960)). This Court will consider this argument with respect to Plaintiff's remaining negligence claims: Count Seven's general negligence and Count Eight's negligent supervision of students.

The Missouri Supreme Court has considered the extent to which judicial decision making may involve analysis of ecclesiastical matters without running afoul of the First Amendment's establishment and free exercise clauses. In *Gibson*, the Missouri Supreme Court clarified that religious institutions may be sued for negligence only "if neutral principles of law can be applied without determining questions of religious doctrine, polity, and practice, then a court may impose liability." *Gibson* at 246. The Court offered cases of slip-and-falls and car wrecks as examples of instances when religious institutions may be held liable for negligent conduct of clergy. *Id*. In *Gibson*, the Court also established it is irrelevant whether a plaintiff's negligence allegation implicates the relationship between the religious institution and its clergy or the institution and another group, such as parishioners. *Id*. at 249. The relevant inquiry is, instead, whether a determination of the religious institution's reasonability would inevitably require the court to judge "the reasonableness of religious beliefs, discipline, and government." *Id*. The court found that the *Gibson* plaintiff's negligent hiring of clergy, negligent failure to supervise clergy, negligent infliction of emotional distress, and general negligence claims against The Catholic Diocese of Kansas City-St. Joseph were impermissible under the First Amendment, as analysis for each would unavoidably require courts to evaluate religious doctrine. *Gibson* at 246-250. The Court emphasized, however, that alleged intentional torts do not involve such an evaluation of religious doctrine and therefore remain permissible in light of the First Amendment.

Later, in *Doe 122 v. Marianist Province of the United States,* the Missouri Supreme Court again considered both establishment and free expression arguments from a religious school, ultimately reaffirming its prior holding in *Gibson*.

> *Gibson* does not grant immunity to religious organizations as Doe contends. Instead, *Gibson* makes clear that "[r]eligious organizations are not immune from civil liability for the acts of their clergy." *Gibson*, 952 S.W.2d at 246. *Gibson* carefully explained that the First Amendment protects religious organizations from claims for damages based on negligence (which require an impermissible examination of ecclesiastical decisions), but not claims based on intentional conduct (which require no such impermissible examination). *See infra* Part II. *See also Gibson*, 952 S.W.2d at 248 (recognizing the claim of intentional failure to supervise clergy). And, of course, the individual accused of abuse is subject to civil or criminal liability for such acts. *Doe 122* at 80–81 (Mo. 2021).

In the present matter, Plaintiff contends that "Agape Defendants must first show coercion of a sincerely held religious belief" and that Agape Defendants have failed to make such a showing. (Doc. 48 at 11). Agape Defendants counter that their challenge arises, not under the Constitution's free exercise clause, but the establishment clause, which prevents "negligence claims against religious institutions like Agape" under Missouri Supreme Court precedent in *Gibson* and *Doe 122*. (Doc. 55 at 9). Agape Defendants further contend that the issue of whether Agape Defendants were "acting as clergy or in line with genuinely held religious beliefs would be relevant if Agape was arguing that negligence claims are barred by the Free Exercise Clause." (Doc. 55 at 9). This Court agrees with Agape Defendants.

The parties are correct that a free exercise claim requires a threshold showing that "the challenged government action infringes upon a sincerely held religious belief." *Gladson v. Iowa Dep't of Corr.*, 551 F.3d 825, 831 (8th Cir. 2009). In contrast, an establishment clause challenge requires looking at whether the complained-of government action "has a secular purpose, does not have a primary effect of advancing or inhibiting religion, and does not result in excessive entanglement with religion." *Murphy v. Missouri Dep't of Corr.*, 372 F.3d 979, 985 (8th Cir. 2004).

Plaintiff offers no authority, nor is this Court aware of any, that somehow limits the Missouri Supreme Court's holdings in *Gibson* and *Doe 122*. Rather, the Court's broad language in both *Gibson* and *Doe 122* is clear that allegations based in Missouri common law of negligence against religious institutions run afoul of the First Amendment, except in limited instances where the negligence allegation does not require interpretation of religious doctrine, policy, or interpretation. *Gibson* at 246-47. It is plain neither of Plaintiff's remaining negligence claims—Count Seven's general negligence and Count Eight's negligent supervision of students—falls into this narrow exception. *Gibson* specifically establishes that Missouri law negligent supervision claims against a religious institution violate the First Amendment because they require a court to evaluate "what the church 'should know.'" *Gibson* at 247. Likewise, general negligence claims against religious institutions violate the First Amendment, as it forces the court to consider how a reasonably prudent religious institution would act, thereby "excessively entangle[ing] itself in religious doctrine, policy, and administration." *Gibson* at 250.

It proves inconsequential that the object of Plaintiff's negligent supervision claim is students rather than clergy, as in *Gibson*, because, under Missouri law, the allegation nonetheless requires an examination of the reasonability of the religious institution's treatment of Plaintiff, a student, which "would inevitably judge the reasonableness of religious beliefs, discipline, and government." *Gibson* at 249. *See also Doe v. Roman Cath. Archdiocese of St. Louis*, 347 S.W.3d 588, 595 (Mo. Ct. App. 2011) ("while [plaintiff] attempts to phrase his claim as a negligent failure to supervise children, his claim for general negligence…still involves the Archdiocese's negligence in failing to supervise [priest]"). Accordingly, Plaintiff's First Amended Petition has failed to state a claim under Count Seven for general negligence and under Count Eight for negligent supervision of students.

16

Case 6:22-cv-03211-MDH   Document 63   Filed 12/19/23   Page 16 of 20

### VII. Impact of the Missouri Constitution on Plaintiff's Negligence-Based Claims in Counts Six, Seven, Eight, and Eleven

Both the Eighth Circuit and the Missouri Supreme Court have recognized "that the provisions of the Missouri Constitution declaring that there shall be a separation of church and state are not only more explicit but more restrictive than the First Amendment." *Perry v. Johnston*, 641 F.3d 953, 956 (8th Cir. 2011) (quoting *Gibson* 952 S.W.2d at 246). In *Perry*, binding authority on this Court, the Eighth Circuit remanded to the district court an opinion in which the district court found the First Amendment did not prevent certain Missouri common law negligence claims against a religious institution. The specific negligence claims at issue in Perry were negligent hiring and negligent retention and supervision of clergy. *Perry* at 954. The Eighth Circuit reasoned that the Missouri Supreme Court's decision in *Gibson*, combined with its description of the Missouri Constitution as more restrictive than the United States Constitution, makes it "highly likely the Supreme Court of Missouri would bar the negligence claims under the Missouri Constitution, if its First Amendment analysis were later abrogated by the Supreme Court of the United States." *Perry* at 957. Accordingly, this Court likewise finds that dismissal of Plaintiff's negligence claims in Counts Six, Seven, Eight, and Eleven is appropriate also under the provisions of the Missouri Constitution declaring separation of church and state and the Eighth Circuit's holding in *Perry*.[23]

---

[2] As the Eighth Circuit notes in a footnote in *Perry*, courts around the country depart significantly on the issue of whether the First Amendment prevents claims of negligence against religious institutions. This Court, in its own analysis on the matter, expresses significant doubt about whether the First Amendment bars negligence claims against religious institutions. What is not in question, however, is the clarity of Missouri Supreme Court's opinion in *Gibson* and *Doe 122*, as well as the Eighth Circuit's holding in *Perry*, all binding on this Court on the issue at hand.

[3] Because Plaintiff's negligence claims are barred by the United States and Missouri Constitutions, this Court declines to consider Agape Defendants' argument as to whether Agape Defendants owed Plaintiff a duty, as required under Missouri common law negligence claims.

17

### VIII. Plaintiff Has Stated a Claim Under Count Nine for Intentional Failure to Supervise

Agape Defendants ague Plaintiff has failed to state a claim for intentional failure to supervise because Plaintiff claims the alleged abuse occurred only at Circle of Hope, thereby stripping from Agape Defendants any right to control the premises where the abuse occurred. The Missouri Supreme Court has found that claim for intentional failure to supervise requires: "(1) a supervisor (or supervisors) exists (2) the supervisor (or supervisors) knew that harm was certain or substantially certain to result, (3) the supervisor (or supervisors) disregarded this known risk, (4) the supervisor's inaction caused damage, and (5) the other requirements of the Restatement (Second) of Torts, section 317 are met." *Gibson v. Brewer*, 952 S.W.2d 239, 248 (Mo. 1997). The Restatement, section 317 provides as follows.

(a) the servant

    (i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or

    (ii) is using a chattel of the master, and

(b) the master

    (i) knows or has reason to know that he has the ability to control his servant, and

    (ii) knows or should know of the necessity and opportunity for exercising such control.

Since *Gibson*, courts have routinely found that stating a claim for intentional failure to supervise in abuse cases requires allegations that the abuse occurred on the supervisor's premises. *See, e.g., Doe v. Roman Cath. Archdiocese of St. Louis*, 347 S.W.3d 588, 591-93 (Mo. Ct. App. 2011) ("the fifth element of a claim for intentional failure to supervise under *Gibson* requires [plaintiffs] to

show the Archdiocese owned, controlled, had a right to occupy or control the location where the abuse occurred, or had some right to control the activity which occurs thereon."); *McCormick v. Johnston*, No. 4:09-CV-140 CEJ, 2012 WL 4793992, at n3 (E.D. Mo. Oct. 9, 2012) (same). Plaintiff does not contest the premises requirement of the intentional failure to supervise claim. Nor does Plaintiff contest Agape Defendants' argument that all alleged abuse occurred on Circle of Hope premises, away from Agape Defendants. Plaintiff argues instead that the premises requirement is established by virtue of the overlap in management between Circle of Hope and Agape Defendants. Because the Agape Defendants had the capacity to exert some influence over Circle of Hope, Plaintiff argues, Plaintiff has sufficiently pled a claim of intentional failure to supervise. At the 12(b)(6) stage, in which all reasonable inferences must be drawn in Plaintiff's favor, this Court agrees. Therefore, Plaintiff's Count Nine claim for intentional failure to supervise is not dismissed.

## CONCLUSION

For foregoing reasons, Agape Defendants' Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**. Specifically, Plaintiff's Count One allegations against Agape Defendants for violation of the TVPRA are dismissed only to the extent Plaintiff has alleged violations occurring prior to December 23, 2008. Plaintiff's Count Two allegations for coercive persuasion, undue influence, and breach of fiduciary duty are dismissed. Under Count Three, Plaintiff's fraud and conspiracy claims are dismissed only to the extent they are based on alleged violation of RSMO § 210.115. To the extent Plaintiff alleges fraud and conspiracy to commit fraud under an alternative theory, such allegations are not dismissed. Plaintiff's Count Four constructive fraud allegation is dismissed. Plaintiff's Count Five intentional infliction of emotional distress is not dismissed. Plaintiff's negligence-based claims in Counts Six, Seven, Eight, and Eleven are

dismissed. Plaintiff's Count Nine allegation of intentional failure to supervise is not dismissed. These dismissals are with prejudice and impact Plaintiff's claims against Agape Defendants alone.

**IT IS SO ORDERED.**

DATED:  December 19, 2023         _/s/ Douglas Harpool_
                                  **DOUGLAS HARPOOL**
                                  **UNITED STATES DISTRICT JUDGE**

20

Case 6:22-cv-03211-MDH   Document 63   Filed 12/19/23   Page 20 of 20